Dunbar v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-112-CR

Â Â Â Â Â RONALD DUNBAR,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court No. 90-083-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â According to the appellant, Ronald Dunbar, on June 6, 1991, his probation was revoked on
an underlying conviction for aggravated assault that had been issued eleven months earlier. See
Tex. Penal Code Ann. Â§ 22.02(a)(1) (Vernon 1994). The trial court, as a result of its order
revoking Dunbar's probation, sentenced him to ten years' incarceration in the Texas Department
of Criminal Justice-Institutional Division.
Â Â Â Â Â Â On March 17, 1997, Dunbar filed a "Motion to File an Out of Time Appeal," which we will
construe as a motion to extend the time to file his notice of appeal. On the same date we received
Dunbar's motion, we notified him by letter that we may dismiss his cause for want of jurisdiction
unless within ten days he demonstrated sufficient grounds for continuing the appeal. See Tex. R.
App. P. 41(b). In a response filed March 27, 1997, Dunbar requested that we extend the time for
him to perfect his appeal because the reason for its untimeliness was the ineffectiveness of his trial
counsel. We will dismiss the cause for want of jurisdiction. 
Â Â Â Â Â Â A timely notice of appeal is necessary to invoke a court of appeal's jurisdiction. Olivo v.
State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). To be timely, a notice of appeal must be
filed within thirty days after the sentence is imposed, or within ninety days if a timely motion for
new trial is filed. See Tex. R. App. P. 41(b)(1). Although it is not apparent in the documents
submitted to us by Dunbar, we will assume that he filed a motion for new trial and that, as a
consequence, his notice of appeal was due September 4, 1991.
Â Â Â Â Â Â Provision is made in the appellate rules for the untimely filing of a notice of appeal. Rule
41(b)(2) provides that "[a]n extension of time for filing notice of appeal may be granted by the
court of appeals if such notice is filed within fifteen days after the last day allowed and within the
same period a motion is filed in the court of appeals reasonably explaining the need for such
extension." Id. 41(b)(2).
Â Â Â Â Â Â Dunbar filed his motion to extend the time to file his notice of appeal on March 17, 1997. 
By operation of Rule 41(b)(2), his motion for extension was due in this court on September 19,
1991. This court has no authority to grant an untimely motion to extend the time to file a notice
of appeal. Olivo, 918 S.W.2d at 522. Therefore, Dunbar's motion to file an out of time appeal
is denied.
Â Â Â Â Â Â Without a timely filed notice of appeal, or a timely filed motion to extend the time to file a
notice of appeal, the appellate court has no jurisdiction over an appeal. Id. at 522-23. Dunbar
has not filed a notice of appeal, and as held above, his motion to extend the time to file a notice
of appeal is untimely. Therefore, this court has no jurisdiction over his appeal, and it must be
dismissed.
Â Â Â Â Â Â The cause is dismissed for want of jurisdiction.
Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM
Before Chief Justice Davis,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Chief Justice McDonald (Retired)
Dismissed for want of jurisdiction
Opinion delivered and filed April 9, 1997
Do not publish



well-being of the child.  Tex. Fam. Code
Ann. Â§ 161.001(1)(D).
Â ÂEndangerÂ means to expose to loss or injury or to jeopardize. Â Texas
Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Â Threat
means more than a threat of metaphysical injury or the possible ill effects of
a less-than-ideal family environment. Â Id. Â Although subsection D
addresses the childÂs surroundings rather than the parentÂs conduct, conduct by
a parent or other resident of a childÂs home can produce an environment that
endangers the physical or emotional well-being of a child. Â See In the
Interest of C.L.C., 119 S.W.3d 382, 392-93 (Tex. App.ÂTyler 2003, no pet.).

The Department first encountered Thomas when her
first child, C.T., tested positive for marihuana at birth. Â C.T. was removed from
ThomasÂs care and placed with her grandmother.[1]Â 
A.R.R. tested positive for cocaine at birth and was likewise removed from
ThomasÂs care and placed with her grandmother.Â  Two years later, D.M.T. tested
positive for marihuana at birth.Â  A.R.R. was living in ThomasÂs home at this
time.Â  The Department took custody of A.R.R. and D.M.T.

Thomas contends that D.M.T. was removed from her
care shortly after birth and A.R.R. was healthy, clean, and cared for when the
Department intervened; thus, the children were never placed in living
conditions that endangered their well-being.Â  However, Thomas admitted using
drugs during pregnancy, despite her knowledge that prenatal drug use could
cause harm to an unborn child.Â  The record also indicates that Thomas used drugs
while in possession of A.R.R.

A parentÂs illegal drug use Âsupports the
conclusion that the childrenÂs surroundings endangered their physical or
emotional well-being.ÂÂ  In the
Interest of D.C., 128 S.W.3d
707,Â 715-16 (Tex. App.ÂFort Worth 2004, no pet.). Â The fact that A.R.R.
was not physically neglected does not negate a finding that her environment
endangered her physical and emotional well-being.Â  See In
the Interest of A.B., 125 S.W.3d
769, 776 (Tex. App.ÂTexarkana 2003, pet. denied) (substance abuse Âlends itself to an unstable home environmentÂ).Â  Nor does the fact that neither child was born with
defects negate a similar finding. Â Both children tested positive for narcotics
at birth.[2]Â 
ThomasÂs prenatal use of narcotics exposed her children to injury.Â  See also
Boyd, 727 S.W.2d at 533.

Thomas claims that she is Âchanging her
environmentÂ and avoiding drugs and Âdrug-type people.ÂÂ  Richard Boyer,
ThomasÂs counselor, testified that this indicates that Thomas is overcoming her
addiction.Â  Both Boyer and Dr. Douglas Cheatham, who performed ThomasÂs
psychological evaluation, believe that with intervention and cooperation Thomas
can make progress.

However, Thomas does not appear to be highly
motivated to change.Â  About four months before trial, she tested positive for marihuana.Â 
The month before trial, Thomas tested positive for a painkiller prescribed to
her mother-in-law.Â  Although several other tests yielded negative results, one
was undeterminable because ThomasÂs system was depleted.Â  Caseworker Jackie
Geer testified that Thomas refused several tests and delayed others.Â  Former
caseworker Joanie Brown testified that Thomas admittedly refused one such test
because she expected to test positive.

Neither has Thomas taken advantage of the
opportunities to overcome her addiction.Â  Boyer provided Thomas with a 12-step
manual that he does not believe Thomas ever used.Â  As of trial, Thomas had a
pending appointment with a drug treatment facility, but had neither begun nor
completed treatment.Â  Despite ThomasÂs
abstinence claims, the trial court could have
formed a firm belief or conviction that ThomasÂs
drug use jeopardized or exposed her
children to loss or injury and that, based on her past conduct endangering the childrenÂs
well-being, similar conduct will recur if the children are returned to her. Â See
Boyd, 727 S.W.2d at 533; see
also In the Interest of B.K.D., 131 S.W.3d 10, 17 (Tex. App.ÂFort Worth 2003,
pet. denied); In re
D.L.N., 958
S.W.2d 934, 941 (Tex. App.ÂWaco 1997, pet. denied), disapproved
on other grounds by C.H., 89 S.W.3d at 26.

Thomas also has an extensive criminal history,
including charges for assault, shop lifting, theft, possession of
cocaine, and possession of marihuana.Â  Shortly before trial, she and her
husband were arrested for prescription fraud in which Thomas denies
involvement.Â  Thomas had recently served time in jail for unresolved traffic
tickets and was also on probation.Â  When parents Ârepeatedly commit criminal
acts that subject them to the possibility of incarceration, that can negatively
impact a childÂs living environment and emotional well-being.ÂÂ  In the Interest of S.M.L., 171 S.W.3d 472, 479 (Tex. App.ÂHouston [14th Dist.] 2005, no pet.).Â  Â[D]rug-related criminal activity by parents and caregiversÂ also
supports the conclusion that the childrenÂs surroundings endangered their
physical or emotional well-being.ÂÂ  D.C., 128 S.W.3d atÂ 715-16.Â  The trial court could have formed a firm belief or
conviction that ThomasÂs criminal
behavior, particularly that involving narcotics, jeopardized or exposed her children to loss or injury. Â See Boyd, 727 S.W.2d at 533.

In summary, ThomasÂs history of substance abuse
and criminal behavior, both of which continued after the removal of the
children from her care, creates conditions or surroundings that endanger her
childrenÂs physical or emotional well-being.

An environment which routinely subjects a child to
the probability that she will be left alone because her parents are once again
jailed, whether because of the continued violation of probationary conditions
or because of a new offense growing out of a continued use of illegal drugs, or
because the parents are once again committed to a rehabilitation program,
endangers both the physical and emotional well-being of a child.Â  

Â 

In the Interest of S.D., 980 S.W.2d 758, 763 (Tex. App.ÂSan Antonio 1998,
pet. denied). Â The evidence is factually sufficient to support the trial
courtÂs finding that Thomas knowingly
placed or knowingly allowed her children to remain in conditions or
surroundings which endanger their physical or emotional well-being. Â Tex. Fam. Code Ann. Â§ 161.001(1)(D).Â  We need not address the factual sufficiency of
the evidence to support the other predicate grounds for termination.Â  See T.N.F.,
205 S.W.3d at 629.

Best Interest of the
Children

Â[T]here is a strong presumption that the best interest of the
child will be served by preserving the parent-child relationship.ÂÂ  T.N.F.,
205 S.W.3d at 633.Â  Several
factors assist with determining when termination is in a childÂs best interest:
(1) desires of the child; (2) emotional and physical needs of the child now and
in the future; (3) emotional and physical danger to the child now and in the future;
(4) parental abilities of the individuals seeking custody; (5) programs
available to assist these individuals to promote the best interest of the
child; (6) plans for the child by these individuals or by the agency seeking
custody; (7) stability of the home or proposed placement; (8) acts/omissions of
the parent which may indicate that theÂ existing parent-child relationship
is not proper; and (9) any excuse for the acts/omissions of the parent.Â  Holley
v. Adams, 544
S.W.2d 367, 371-72 (Tex. 1976).Â  This list is not exhaustive, but includes
the most important considerations. Â Swate
v. Swate, 72
S.W.3d 763, 767 (Tex. App.ÂWaco 2002, pet. denied).Â  Although no single
consideration is controlling, the analysis of one factor may be adequate in a
particular factual situation to support a finding that termination is in the
best interest of the child.Â  Id.Â Â Â Â Â Â  

Desires of the children.

Due to the childrenÂs young age, the record
contains no direct evidence of their desires. 

Emotional
and physical needs of the children now and in the future.

Â 

Thomas was able to keep A.R.R. healthy and clean, but
has been unable to maintain stable employment.Â  In the twelve months before
trial, she held three separate jobs each lasting no more than a few weeks.Â 
When employed, Thomas provided financial support to the children.

Thomas initially refused to perform services
because she was ÂundecidedÂ about fighting for her children.Â  Dr. Cheatham
believes that Thomas has a Âreal and genuine concernÂ for her children, but ThomasÂs
initial indifference causes him to question her attachment to the children.Â  Cheatham
stated that Thomas Âcannot weigh the needs of the child[ren] and sacrifice at a
level that is necessary for their well-beingÂ and Âhas difficulties
prioritizing the needs of her children over her own needs.ÂÂ  Boyer testified
that Thomas focuses more on herself than Âbeing sensitive to the needs of her
children.ÂÂ  Â Â 

During visits, Geer observed Thomas interact more
with the older children than with D.M.T.Â  Thomas sometimes became upset and
ended her visits with the children unless accompanied by a relative.Â  Supervisor
Paula Lee stated that Thomas seemed unable to care for the children unless
someone was available to help her. Â ThomasÂs behavior caused Geer to question
ThomasÂs attachment to the children.Â  The record reflects that ThomasÂs
interaction with the children did improve.

Emotional
and physical danger to the children now and in the future; acts/omissions of
the parent which may indicate that the existing parent-child relationship is
not proper.

Â 

Thomas admitted using and handling drugs during
her pregnancies and while in possession of A.R.R., using drugs even though she
knew prenatal drug use may harm an unborn child, and using drugs to cope with
stress.Â  The record contains evidence that Thomas continued using drugs after
her children were removed from her care. Â Despite her claims of being drug
free, Thomas admitted that she has not been able to overcome her addiction in
the past.Â  Her criminal history includes drug related charges.Â  Thomas did not
complete drug treatment as required by the Department and discontinued
counseling.

Â 

Parental
abilities of the individuals seeking custody.

Â 

Thomas completed parenting classes and appears to
have some level of parenting skills.Â  Thomas
did not neglect A.R.R. and testified that she can take care of her children.Â  She
views the return of her children as a motivating factor for change.

Dr. Cheatham testified that ThomasÂs Âability to
modulate, manage, and deal with her own emotional state is not functioning
where we need it to function for her to be a minimally adequate provider.ÂÂ  With
intervention and cooperation, Cheatham believes that Thomas could provide a
Âminimal level of adequate parenting,Â but she does not seem to be as motivated
as other parents.

Boyer testified that Thomas complained about the service
plan and believed that exercising Âgood faithÂ was sufficient to keep her
children, regardless of her behavior or Âwhere she was in terms of completing
her plan.ÂÂ  Boyer did not observe Thomas accept any responsibility for the
risks to her children.Â  Boyer testified that Thomas has made progress and could
continue to do so.Â  As of his final session with Thomas, he could not say that Thomas
possessed the commitment to improve or that the improvement she had made was so
significant that she no longer posed a risk to her children.Â  He did not believe
that Thomas could provide for the childrenÂs minimal needs unless she continued
receiving therapy.

Programs
available to assist these individuals
to promote the childrenÂs best interest.

Â 

The Department required Thomas to undergo a psychological evaluation, drug assessment, drug
treatment, random drug screening, parenting classes, and counseling.Â  Dr.
Cheatham recommended that Thomas obtain her GED and vocational training,
improve her parenting skills, complete drug rehabilitation, and seek individual
psychotherapy.Â  Thomas completed a psychological evaluation and parenting
classes.Â  She began GED classes a few days before trial.

Plans
for the children by these individuals or by the agency seeking custody; stability
of the home or proposed placement.

Â Â Â Â Â Â Â Â Â Â Â  

Thomas loves and wants her children.Â  She believes
it is in the childrenÂs best interest to know Thomas and C.T. and grow up with
their own family and race.Â  Thomas plans for the children to live with her aunt
until Thomas completes rehabilitation.Â  ThomasÂs aunt failed her first home
study because of inadequate housing.Â  A second home study was approved, but ThomasÂs
aunt subsequently lost her job.Â  ThomasÂs aunt testified that she is seeking
employment and has a Âgood chanceÂ of obtaining employment.Â  Caseworker Haywood
Thomas testified that the children would have been placed with ThomasÂs aunt
had she not lost her job.

After she completes rehabilitation, Thomas plans
for the children to reside with her.Â  Both Thomas and her aunt testified that
Thomas has a good support group.Â  Jock was concerned about the stability of
ThomasÂs living arrangements.Â  Boyer observed Âconflict, arguing, fighting,
[and] disagreementsÂ between Thomas and her husband.Â  Dr. Cheatham testified
that stress from ThomasÂs interpersonal relationships causes her to Âthink and
do things that are not necessarily good for her or her family.ÂÂ  However,
Thomas, and her husband, had begun to make some progress.

Geer testified that A.R.R. was quiet, shy, and withdrawn when removed from
ThomasÂs home.Â  Lee testified that the children are thriving in their foster
home.Â  D.M.T. is walking, active, and mobile.Â  A.R.R. knows her colors, enjoys
reading, and is alert and talkative.Â  Geer testified that the childrenÂs needs
are being met and they are healthy, well adjusted, and doing well.Â  Lee believes
that the children are Âgood candidates for adoption.ÂÂ  Both Lee and Geer indicated
that the Department would attempt to locate an adoptive home for both children.

Any excuse for the acts/omissions of the parent.

Â Â Â Â Â Â Â Â Â Â Â  Thomas offered no excuse for her drug addiction or criminal
behavior.Â  She explained that her inability to maintain employment results from
one business being bought out, one employer conducting a lay off, and her
relocation to another city.Â  Thomas did not continue counseling after she
relocated, contending that Boyer did not answer his telephone or return her
calls.Â  Thomas testified that she missed her first appointment with a
rehabilitation facility because she received incorrect directions.Â  Thomas has
scheduled another appointment.

ConclusionÂ Â  

ThomasÂs substance abuse and criminal behavior
give rise to a lifestyle that demonstrates
her inability to provide a stable environment for the children and to provide
for their emotional and physical needs.Â 
Her Ârecent efforts to remain drug
freeÂ do not Âtotally offsetÂ her history of substance abuse.Â  In the Interest of A.D., 203 S.W.3d 407, 414 (Tex. App.ÂEl Paso 2006, no
pet.).Â  A trial court may Âmeasure
the future conduct of parents by their recent past conduct, but is not required
to believe that there has been a lasting change in a parentÂs attitude since
his children were taken.Â K.A.S., 131 S.W.3d at 229-230.Â 
Thomas has not demonstrated a willingness to place her childrenÂs needs above
her own.

Accordingly, the trial court could reasonably form
a firm belief or conviction that termination of the parent-child relationship
is in the childrenÂs best interest. Â See
In the Interest of D.S., 176 S.W.3d 873, 879 (Tex. App.ÂFort Worth 2005,
no pet.) (drug use, unstable
lifestyle, and failure to comply with service plan, complete drug treatment,
provide stable home, and maintain employment can support a finding that termination
is in the childÂs best interest). Â We overrule ThomasÂs sole point of error and
affirm the trial courtÂs judgment.

Â 

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed 

Opinion delivered and
filed August 1, 2007

[CV06]









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  C.T. is not involved in this
proceeding.





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  Thomas contends
that the Department presented no medical evidence that the children tested
positive for narcotics at birth.Â  However, caseworkers Laura White and Dawn
Jock testified that A.R.R. and D.M.T. both tested positive at birth.Â  Thomas
did not object to this testimony.Â  Moreover, the court was entitled to
disbelieve ThomasÂs denials that the children tested positive for narcotics.Â  See
In the Interest of K.A.S., 131 S.W.3d 215, 229 (Tex. App.ÂFort Worth
2004, pet. denied).